UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| WHEAT WILLIAMS III, | : | Case No. 3:20-cv-00235 |
| Plaintiff, | : | District Judge Michael J. Newman |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

Plaintiff Wheat Williams filed an application for Disability Insurance Benefits and for a period of benefits in February 2016.[2] The claim was denied initially and upon reconsideration. After two hearings in November 2018 and March 2019, respectively, Administrative Law Judge (ALJ) William Callahan concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.
[2] Plaintiff had previously filed an application for Disability Insurance Benefits and for a period of benefits in August 2015, but that application was denied at the initial level and Plaintiff, who was unrepresented at the time, did not appeal that determination. The subsequent application filed in February 2016 was filed within 12 months of the previous application. Therefore, the ALJ determined that it was permissible to reopen Plaintiff's previous application. (Doc. No. 6-2, PageID 49).

Plaintiff subsequently filed this action. He now seeks a remand for benefits, or in the alterative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The present case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 12), and the administrative record (Doc. No. 6).

## II. BACKGROUND

Plaintiff asserts that he has been under a disability since August 1, 2003. On the date last insured, he was thirty-nine years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). He has at least a high school education.

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. No. 6-2, PageID 49-62), Plaintiff's Statement of Errors (Doc. No. 9), and the Commissioner's Memorandum in Opposition (Doc. No. 12). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant

paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §423 (d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakely*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…" *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant

3

of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. THE ALJ'S DECISION

As noted previously, it fell to the Administrative Law Judge to evaluate the evidence connected to Plaintiff's application for benefits. In doing so, he considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful activity since August 1, 2003, his alleged onset date.

Step 2: Plaintiff has the severe impairments of depressive disorder, attention deficit hyperactivity disorder (ADHD), and obsessive-compulsive disorder (OCD).

Step 3: He does not have an impairment or combination of impairments that or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity, or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple, routine tasks; he is able to make simple, work-related decisions; and he is able to interact with supervisors, coworkers, or the general public occasionally."

Step 4: Plaintiff has no past relevant work.

Step 5: Plaintiff is capable of performing a significant number of jobs that exist in the national economy.

(Doc. No. 6-2, PageID 52-62). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 62.

## V. DISCUSSION

Plaintiff sets forth two errors in the present action. He contends that error occurred in weighing the treating source opinion from his psychiatrist, Dr. Michael Lyles. He further alleges that the residual functional capacity assessment does not adequately capture his limitations, and therefore, is not supported by substantial evidence.

Social Security Regulations require ALJs to generally extend "greater deference…to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers*, 486 F.3d at 242. The Commissioner must afford controlling weight to a treating physician opinion when it is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) not inconsistent with the other substantial evidence in the record. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).

If the opinion is not controlling, then the ALJ must consider the regulatory factors, which include "the length, frequency, nature, and extent of the treatment relationship as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)-(6)). Additionally, in discounting the weight given to a treating physician opinion, the ALJ must provide "good reasons" that are "supported by the evidence in the case record." *Id.* (citing Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). This "clear procedural requirement" certifies "that the ALJ applies the treating physician rule and permits

5

meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5).

Dr. Lyles' opinions are set forth in several letters authored in May 2013, January 2019, and March 2019, respectively, as well as a questionnaire completed in August 2018. *Id.* at 59-60. As a threshold matter, the undersigned must recognize that a few of Dr. Lyles' opinions, particularly some of the opinions contained in his May 2013 letter, were conclusory opinions that go to the heart of the disability determination, and are therefore reserved to the Commissioner. *See McGeorge v. Comm'r of Soc. Sec.*, 309 F.Supp.3d 514, 519 (S.D. Ohio 2018) (Newman, M.J.); 20 C.F.R. § 404.1527. As a result, these opinions were not entitled to controlling weight, and were properly assessed.

The remainder of Dr. Lyles' opinions, however, fall outside of this category, and while the ALJ provided reasons for affording these opinions little or partial weight, these reasons are not supported by substantial evidence.

In part, Dr. Lyles opined that Plaintiff was more than moderately impaired in his ability to interact with the public, coworkers, and supervisors, and that he would not be safe in a job that involved any intensity of conflict. (Doc. No. 6-9, PageID 1267). These opinions were afforded "little weight." (Doc. No. 6-2, PageID 59-60). Dr. Lyles also opined that Plaintiff's lack of responsiveness to medication "contributed to his inability to sustain employment in conjunction with his treatment resistant depression." (Doc. No. 6-9, PageID 1270). This opinion was afforded "partial weight." (Doc. No. 6-2, PageID 60).

These opinions, although separately weighed, were discounted due to a common thread—Dr. Lyles' supposed failure to account for Plaintiff's part-time work and

6

participation in choir, when rendering his opinions. And, this was the only rationale provided in assessing Dr. Lyles' opinion that Plaintiff's lack of responsiveness to medication has affected his ability to sustain employment. (Doc. No. 6-2, PageID, 59-60).

Repeated reliance on this rationale, however, was misguided. In assessing a claimant's residual functional capacity, an ALJ's decision must comply with Social Security Ruling 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, which states, in part:

> Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for five days a week, or an equivalent work schedule.

*Id.*, 1996 SSR LEXIS 5, 1996 WL 374184 at *2. The record reflects that at the time of Dr. John Muller's psychological consultative evaluation, Plaintiff was working part-time two days per week as a tutor, presumably only a few hours per day as Plaintiff worked on Monday evenings and Saturday mornings. (Doc. No. 6-9, PageID 1247). Plaintiff testified that his boss asked him to tutor additional kids, but Plaintiff declined to take on additional responsibility (and likely more hours), because he would not be able to handle the stress. (Doc. No. 6-2, PageID 96). At that time, Plaintiff was also involved in church choir and a seasonal singing group. (Doc. No. 6-9, PageID 1248).

Yet, Plaintiff's ability to work part-time and engage in other activities such as choir does not equate to an ability to work on a regular and continuing basis. Therefore, the fact that Dr. Lyles did not outwardly account for Plaintiff's part-time work and activities in assessing Plaintiff's ability to perform work on a regular and continuing basis does not render Dr. Lyles' opinions to be inconsistent or unsupported by the record. *See Mack v.*

7

*Colvin*, No. 3:12-cv-115, 2013 WL 3935057, at *10-11 (S.D. Ohio, July 30, 2013) (Ovington, M.J.), report and recommendation, adopted, 2013 WL 4457369, at *1 (S.D. Ohio Aug. 20, 2013) (Rose, D.J.) (Substantial evidence did not support the ALJ's decision to rely on claimant's part-time work to reject the medical sources opinions where claimant's "part-work was minimal and did not come anywhere near full-time work").

Additionally, other evidence of record supports Dr. Lyles' opinions as to Plaintiff's abilities to sustain employment. Plaintiff worked in a contract position for a brief period, and his former bosses, although not medical professionals, completed questionnaires detailing his past work. The opinions on these questionnaires were only afforded "partial weight" because they related to Plaintiff's ability to perform skilled or semi-skilled work, and supposedly did not correlate to Plaintiff's ability to perform unskilled work. Eric Stephens (CTO) indicated that Plaintiff's work ended because he was "too difficult to manage" and due to "co-worker stress." (Doc. No. 6-6, PageID 581). Part-time work was "difficult," and full-time work was "impossible." *Id.* at 582. Plaintiff was granted "special supervision," but even then, Plaintiff had trouble relating to co-workers because "small interactions turned confrontational and any distractions led to loss of focus." *Id.* He also had trouble relating to his supervisor. *Id.* at 581. Ken Schumacher (COO), explained that Plaintiff "was not permitted to work directly with customers," and was "excessively tardy" or would otherwise fail to show up completely. *Id.* at 585.

Dr. Lyles' opinions, particularly those related to Plaintiff's ability to interact with others, were further discredited due to the purported infrequency of his encounters with Plaintiff. (Doc. No. 6-2, PageID 60). This reasoning is also not supported by substantial

8

evidence. As reflected in the record, Dr. Lyles has treated Plaintiff on a quarterly basis since July 2008. (Doc. No. 6-7, PageID 733). And during this time, he has provided individualized therapy on a regular and routine basis, and also has conducted genetic testing. (Doc. No. 6-2, PageID 52, 60). Dr. Lyles diagnosed Plaintiff with ADHD and OCD, which added to Plaintiff's "lengthy longitudinal history of depression." *Id.* at 52.

In assessing his opinions, the ALJ repeatedly emphasized that Dr. Lyles saw Plaintiff "albeit on a quarterly basis," and that he "has only seen [Plaintiff] a handful of times per year…" (Doc. No. 6-2, PageID 60). However, even treatment on a quarterly basis means that Dr. Lyles has presumably had more than forty encounters with Plaintiff during the lengthy treatment relationship, which means that he is well-positioned to provide a longitudinal picture of Plaintiff's impairments. *See* 20 C.F.R. 404.1527(c)(2).

The ALJ also explained that "the infrequency of [Dr. Lyles'] treatment sessions is arguably inconsistent with the degree of limitation he has expressed…" because "one would expect must closer monitoring if [Plaintiff] were considered a threat to himself via suicidal ideations of even a passive nature over the past 10 years." *Id.* To support this assessment, the ALJ emphasized that aside from seeing a therapist from 2012 to 2014 on a bi-monthly basis, Plaintiff "has not been followed on even a monthly basis by any psychiatric provider." *Id.* This explanation conveniently omits a relevant fact—one that was recognized earlier in the non-disability decision. As explained at Step Two, Plaintiff received counseling services twice per month from Jennifer Stuckert from 2012 to 2014, but he "had to stop due to reported insurance and financial constraints." *Id.* at 52. Plaintiff's inability to continue with additional treatment for financial reasons certainly

9

does not make his mental impairments any less severe, and also does not serve as a reasonable basis to conclude that Dr. Lyles' opined limitations are inconsistent.

Likewise, the overt negative emphasis on the frequency of Dr. Lyles' encounters is even more concerning in light of the weight assigned to the opinions rendered by consultative psychologist, Dr. Muller. Dr. Muller evaluated Plaintiff on a single occasion in December 2018, and Plaintiff testified that the evaluation lasted approximately 45 minutes. *Id.* at 58, 89. Yet, despite this single, brief encounter, all but one of Dr. Muller's opinions were afforded "great weight." *Id.* at 59. *See* 20 C.F.R. § 404.1527(c) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source").

Looking briefly to the other medical opinions, the ALJ's assessment of those opinions suggests that Dr. Lyles' opinions were erroneously subjected to greater scrutiny than the opinions issued by non-treating sources. State agency psychological consultants, Drs. John Cooper and Michelle Wierson, found that Plaintiff had no medically determinable mental impairment prior to Plaintiff's date last insured—which had been erroneously miscalculated as December 31, 2007. (Doc. No. 6-2, PageID 58). Notably, these opinions were afforded "little weight" like many of Dr. Lyles' opinions, despite the fact that "they did not [know] [*sic*] that evidence after December 31, 2007 was relevant to this case." *Id.* The fact that these non-treating source opinions were afforded the same weight as many of Dr. Lyles' opinions—especially in light of this prominent deficiency— suggests that the ALJ weighed Dr. Lyles' treating source opinion more critically than the

10

non-treating source opinions. This is contrary to applicable Social Security Regulations. *See Gayheart*, 710 F.3d at 379 ("A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires.") (citations omitted).

Dr. Lyles' treatment records were also flagged as being inconsistent with the degree of limitations set forth in his opinions. However, aside from this conclusion, there are no direct references to the actual contents of these records or Dr. Lyles' specific observations. Instead the ALJ vaguely asserts that Dr. Lyles' records "suggest that Plaintiff has been rather stable in the intervening decade, and there have been no additional inpatient psychiatric hospitalizations since 2003." (Doc. No. 6-2, PageID 60).

However, evidence of record, including Dr. Lyles' observations, indicate that despite a lack of recent hospitalizations, Plaintiff's condition had not improved. Dr. Lyles' records reflect that Plaintiff was unable to find significant improvement through mediation despite trying more than fifteen medications for depression and anxiety. (Doc. No. 6-7, PageID 855). Plaintiff's therapist, Jennifer Stuckert, provided two progress updates that documented Plaintiff's lack of improvement. The first update, which occurred after less than ten sessions with Plaintiff, indicated that Plaintiff was compliant with treatment, but that he was not progressing nor improving. (Doc. No. 6-7, PageID 812). In a later progress note—after approximately 11-16 sessions with Plaintiff—she again observed that Plaintiff was compliant but not progressing nor improving. *Id.* at 810.

Relatedly, the Commissioner contends that the assessment of Dr. Lyles' opinions is supported by substantial evidence and argues that "Dr. Lyles did not always conduct mental

11

status exams, had somewhat perfunctory notes from his appointments, and did not offer much in the way of treatment aside from medication adjustment." (Doc. No. 12, PageID 1314). However, the ALJ did not seemingly discredit Dr. Lyles' opinions on these specific grounds aside from a brief statement that Dr. Lyles had minimal treatment records and infrequent treatment sessions. This Court cannot accept the Commissioner's *post hoc* rationalizations. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014).

This assertion also fails to appreciate the true nature of Dr. Lyles' medication management. As indicated above, Dr. Lyles noted that Plaintiff had tried more than fifteen medications for depression and anxiety. Plaintiff also did not respond to other types of medication, such as his ADHD medication. Dr. Lyles completed genetic testing to determine the reason for Plaintiff's lack of responsiveness this medication. (Doc. No. 6-9, PageID 1270). He described that several types of stimulant and amphetamine medications had actually worsened Plaintiff's anxiety and also caused a cardiac side effect with tachycardia and hypertension. *Id.* Plaintiff did not respond to non-stimulant medication. *Id.* Dr. Lyles later determined through genetic testing that Plaintiff was an "ultra-rapid metabolizer" for a specific liver enzyme, which "explained why his body had little effect from these [*sic*] medication." *Id.* These findings led Dr. Lyles to the opinion that Plaintiff's lack of responsiveness to medication has contributed to his inability to sustain employment. As discussed above, this opinion was only afforded "partial weight" because Dr. Lyles did not acknowledge Plaintiff's part-time work.

Furthermore, the Commissioner contends that Dr. Lyles did not provide explanations for his opinions on the mental impairment questionnaire, and therefore, this

12

reasonably weighed against his opinions. This argument, however, is unpersuasive because the ALJ did not provide this as a reason for discrediting Dr. Lyles' opinions, and as before, this Court cannot accept *post hoc* rationalization. *See Keeton*, 583 F. App'x at 524. Additionally, there was little, if any, consideration of the opinions contained in the mental impairment questionnaire beyond the ALJ citing to the corresponding exhibit.

Accordingly, for the above reasons, Plaintiff's asserted error is well-taken.[3]

## VI. REMAND

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). A remand under sentence four may result in the need for further proceedings or an

---

[3] In light of the foregoing, the undersigned declines to address Plaintiff's remaining claim.

13

immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Disability Insurance Benefits should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's non-disability decision is **VACATED**;

2. No finding is made as to whether Plaintiff Wheat Williams III was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this decision; and

4. The case is terminated on the Court's docket.

June 16, 2021                                        *s/Sharon L. Ovington*
                                                     Sharon L. Ovington
                                                     United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).